## BEAUMONT COCA COLA BOTTLING CO. v. GUILLOT.

### No. 4604.

Court of Civil Appeals of Texas. Beaumont.
June 16, 1949.

Rehearing Denied July 13, 1949.

Cecil & Keith, Beaumont, for appellant.
O'Fiel & O'Fiel, Beaumont, for appellee.

COE, Chief Justice.

Appellee brought this suit in the district court of Jefferson County, Texas, to recover the sum of $2500 alleged to have been his damages sustained by reason of his having drunk a portion of a bottle of Coca Cola that he had previously purchased in which he found a piece of bandage or gauze which had so contaminated the contents of the bottle as to cause him to retch, vomit and suffer great physical distress. Appellee's suit was pitched upon the theory of negligence specifically in failing to properly clean and sterilize the bottle prior to the use thereof, and an allegation of general negligence invoking the rule of res ipsa loquitur.

Appellant answered by a general denial. Upon the trial the jury found that the bottle of Coca Cola purchased by the appellee was contaminated; that he partook of such liquid and was thereby caused to be made sick; that in the manufacture of the Coca Cola the appellant, the defendant below, failed to use ordinary care which was a proximate cause of appellee's injuries and his damages were set at $250. Appellant's amended motion for new trial having been timely presented and overruled, this cause is now properly before this court for review. The substance of appellant's complaint is that there was no evidence to support the finding of the jury to the effect that in the manufacture of the Coca Cola the appellant failed to use ordinary care.

The pleadings of the appellee with reference to the cause of action is as follows: "That the illness and damages above described and related came about through negligence upon the part of the defendant in failing to properly clean and sterilize bottles used by them in the bottling of said drinks prior to their use and re-sale to the public or if plaintiff be mistaken then such illness and damages were the result of acts of omission or commission peculiarly known to the defendant alone, each and all of the instruments and machinery used by said defendant in the bottling of said drink being under exclusive supervision and control of defendant and this plaintiff having no part in the direction or control of same; and that such acts of omission and commission, whether specifically stated or unknown to this plaintiff are the direct and proximate result of plaintiff's damages and but for which same would not have happened or occurred."

Upon the trial of the cause it was stipulated between the parties that the bottling of these drinks, a soft drink known as Coca Cola is and was during April, 1948, conducted under the exclusive control of the Beaumont Coca Cola Bottling Company. A brief summary of the other evidence offered by appellee is as follows:—By the

plaintiff: That upon the day in question, that is, about April 19, 1948, he purchased a bottle of Coca Cola from a dispensing machine at the Texas Company, Fort Neches Plant, and that the only thing he had to do in connection therewith was that he and several fellow employees went up to the Coke dispensing machine and procured a bottle of Coca Cola, taking the cap off and taking several drinks therefrom when he noticed an object in the bottle of Coca Cola. The plaintiff then took the bottle on to work with him and was able to complete the remainder of his work that day, but that he felt ill and his stomach was in an uproar. He then went to see Dr. Durden who gave him a prescription and that each time the plaintiff sees a bottle of Coca Cola he now experiences nausea; that when the bottle came from the machine the cap was on and that he took the cap from the bottle immediately after taking it from the machine, and that he did not put anything into the bottle. Hubbard Smith, a witness for appellee, testified that he was President of the Texaco Club; that there is a Coca Cola dispenser on the Texaco Club premises at the Fort Neches Plant that was installed by the Club after having purchased the same from the Coca Cola Bottling Company; that he was not in town on the 19th of April, the day of the occurrence in question, but that the machine was there; that he had been president of the club for quite some time and described the usual course whereby the Texaco Club acquired the Coca Cola for use in the machine. He stated that the bottling company came by and left full cases for the number of empty cases present; that the bottles of Coca Cola were not opened before placing them in the machine; that he would lose money if we opened the bottles; that when you open that bottle that's 5 cents gone; that he places most of the bottles into the machine; that we have several fellows and occasionally when I am not there they all want Cokes so I leave it to them and they all know where the key is and they fill it for me; that he had no occasion to remove the caps from the bottles before they are put into the machine; that the bottles are taken by him, or someone under his direction or supervision, in the condition in which they arrive from the Coca Cola Company and placed in the machine; that was the usual and customary way the Coca Cola was handled. Homer Tetley was called by the appellee and testified that he was an employee of the Texas Company and that when the boys went to work that day Guillot got his Coca Cola just ahead of the witness, and when he got it he discovered something in it and showed it to him; that it looked like a rag but that the witness did not know what it was. In describing how the machine operates he stated that the 5 cent piece is placed in the machine and the Coca Cola falls out of the machine; that Guillot opened the bottle after it came from the machine and turned kind of pale, and further says that Guillot did not place anything in the bottle after he had opened it after procuring the bottle from the machine. William Allemore, a fellow employee, testified that he saw Guillot put his nickel in the coke machine, the bottle came down the slot, Guillot opened it and started drinking from the bottle then he said while they were standing and talking Guillot turned kind of pale and someone asked him what was in the bottle and that they examined the bottle and saw that it was contaminated. This is substantially the evidence bearing on the point under discussion. Appellant did not offer any testimony, but relied upon its motion for peremptory instruction at the close of appellee's case.

Issue No. 4 which was submitted to the jury on the question of negligence of the appellant reads as follows: "From a preponderance of the evidence, do you find that in the manufacture of said liquid known and designated as 'Coke' that the defendant, its agents and employees, failed to use ordinary care?" To which the jury answered "Yes". This issue was followed by subsidiary issues of proximate cause and damages with the result as above indicated.

In addition to a motion for an instructed verdict, on the grounds that there was no evidence to support the submission of Issue No. 4, appellant objected to the submission of such issue on the ground that there was no evidence to support the submission in that the appellee wholly failed to establish

that the presence of the foreign ingredient in said bottle of Coca Cola was in any way attributable to any act of carelessness nor of negligence on its part, and there is not one scintilla of testimony to raise the issue in Special Issue No. 4. These points were brought forward in their amended motion for a new trial; however in different language.

■■ We overrule appellant's Points of Error and hold that the evidence was sufficient to raise the issue of negligence on the part of appellant as submitted in Special Issue No. 4. However, we do not think the evidence sufficient to show appellant's negligence as a matter of law. Appellant contends that there was no testimony establishing the fact that the bottle of Coca Cola was in the same condition when delivered from the machine to Guillot as it was when delivered from them direct to the Texaco Club, and further that the testimony affirmatively discloses that persons other than the witness Smith frequently handled these bottles prior to the time they were actually consumed by the respective vendees of the Coca Cola at the machine, and assert that this court can take judicial knowledge of the fact that it is a very simple and easy matter to remove the metal cap from an ordinary bottle of a soft drink and to insert some foreign ingredient therein and promptly recap the same. Appellant further contends that since the offending object which inflicted the injury was not in the possession or control of the appellant at the time of the casualty, that the rule res ipsa loquitur cannot be relied upon to support the finding of the jury. In cases of this kind where food or drink intended for human consumption is marketed in sealed containers, it is not necessary that the instrumentality causing the injury be within the physical control of the person sought to be held liable under the rule of evidence known as res ipsa loquitur. As stated in the case of Benkendorfer et al. v. Garrett et al., Tex.Civ.App., 143 S.W.2d 1020, 1023: "There is nothing * * * in the reason for the rule (res ipsa loquitur) or in the principles upon which it is founded to support the contention that its application is limited to cases where the

injurious agency is in the control of the defendant at the time of the injury, but it is sufficient if it appears that such agency was in his control at the time of the negligent act which caused the injury."

■ The evidence in this case raises the inference that some one was negligent and definitely that it was not the appellee, and from the evidence of the customary manner of handling the Coca Cola by the Texaco Club after it was delivered to them by the appellant would justify an inference that the Texaco Club was not negligent, yet the inference of negligence of some one remains and we are of the opinion that the jury was authorized to find that it was more reasonable to infer that it was the appellant who was guilty of the negligent act. There is no evidence tending to free appellant from this inferred negligence. We cannot agree with appellant that we are authorized to take judicial knowledge of the fact that it is an easy matter for anyone to remove the metal cap from a bottle of Coca Cola, insert some foreign substance therein and then recap the bottle. This might or might not be true, in fact we are inclined to believe, if we were to take judicial knowledge of any fact, it would be that in order to replace the cap from the bottle of any gaseous soft drink that some type of recapping machine would have to be used if the gases were to be retained in the bottle.

The question of no evidence to support the finding of the jury to Special Issue No. 4, being the only point involved in this appeal, and being convinced that the rule of evidence commonly referred to as res ipsa loquitur is properly applicable to the facts in this case and that appellee's evidence was sufficient to raise the issue of negligence on the part of appellant, appellant's points are overruled and the judgment of the trial court will be affirmed. In support of our conclusions see: Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001; Benkendorfer v. Garrett, Tex.Civ. App., 143 S.W.2d 1020; Coca-Cola Bottling Co. of Fort Worth v. Smith, Tex.Civ.App., 97 S.W.2d 761, 765; Wichita Falls Traction Co., v. Elliott, 125 Tex. 248, 81 S.W.2d 659.