**KEYSTONE–FLEMING TRANSPORT, Inc., Appellant,**

v.

**CITY OF TAHOKA, Appellee.**

No. 6788.

Court of Civil Appeals of Texas.

Amarillo.

June 16, 1958.

Rehearing Denied Sept. 8, 1958.

McWhorter, Cobb & Johnson, Lubbock, for appellant.

Calloway Huffaker and Harold Green, Tahoka, for appellee.

PITTS, Chief Justice.

This appeal was from a judgment rendered on October 12, 1957, awarding appellee, City of Tahoka, property damages in the sum of $2,500 as against appellant, Keystone-Fleming Transport, Inc., upon a jury verdict returned on June 15, 1957, which verdict supports the judgment. This suit arose out of an explosion from a fire already burning which involved two trucks, each with a cab and with a semi-trailer attached, loaded with tanks of liquid gas or butane and propane, which occurred on a public highway about six miles west of Tahoka, Texas, on or about April 26, 1953. Appeals from several suits arising out of this occurrence have been before this Court previously, including a venue action between the parties here involved resulting from the original pleadings filed herein, 285 S.W.2d 869. However, this suit finally tried on the merits before a jury was heard on new and additional pleadings filed with the evidence having been developed much more fully than that heard on the venue issues.

Appellee filed this suit which went to trial on its second amended original petition, alleging in effect that appellant's two employees or agents were driving the two said loaded trucks, one closely behind the other, upon a level highway with clear vision, soon after midnight on the date in question when, as a result of the negligence of one or both such employees, the two trucks and the liquid gas tanks thereon collided with each other causing a flash of fire endangering the lives of appellant's said employees; that upon being advised of the fire and the possibility of the truck operators being entrapped in the truck cabs, appellee's volunteer fire department rushed immediately to the scene of such with one of appellee's fire trucks for the purpose of rendering whatever aid might be possible; that upon arrival at the scene, appellee's firemen parked their fire truck approximately 250 feet from the burning trucks, one on each side of the paved highway, and by the use of a long hose and a fog nozzle as a protective screen they carefully examined the cab of one of the burning trucks but found no one in it and concluded the raging fire was too serious to try to examine the cab of the other burning truck and further concluded that the danger was so imminent that they should hurriedly move away from the danger, but before they could roll up the fire truck hose and get away one of the liquified petroleum gas tanks exploded with a portion of the said tank hitting appellee's fire truck with such force as to cause material damage in the sum of $6,000; that by reason of such alleged facts appellee was entitled to recover under the doctrine of res ipsa loquitur, meaning "the thing speaks for itself"; and that in the alternative appellee likewise pleaded numerous special acts of negligence of appellant's said employees which proximately caused its damages. Appellant joined issues with appellee and further alleged that appellee's firemen voluntarily placed themselves and the fire truck in a position of peril and that they likewise poured cold water upon the burning trucks and equipment, which resulted in the explosion and damages of the fire truck.

Upon the trial the jury found in effect that the collision of appellant's trucks occurred by reason of the negligence of appellant's truck drivers and that such negligence was a proximate cause of appellee's damages; that appellee's firemen had reason to believe that there might be a person entrapped in one or both of the cabs of the burning trucks at the time they arrived at the scene; that a person entrapped in the cab of either of the burning trucks at such time would have been in a position of imminent peril; that by reason of facts shown such possible entrapment and imminent peril would have caused firemen in the exercise of ordinary prudence to attempt to go to the burning trucks at the time they arrived in an attempt to rescue such

person or persons; that appellee's firemen went to the burning truck in question in an attempt to rescue any person or persons that might have been entrapped therein; that by reason of the evidence showing a probable position of imminent peril of any person or persons who might have been entrapped in either of the cabs of the burning trucks was such as would cause ordinary prudent firemen to attempt a rescue without time for deliberation as to the consequences; that one or the other of appellant's truck drivers failed to keep his truck under proper control which failure was negligence that proximately caused appellee's damages; that one or the other of appellant's truck drivers failed to keep a proper lookout at the time and place in question which failure was negligence that proximately caused appellee's damages; that appellant's driver of the rear truck failed to stop his said truck while following the lead truck on the occasion in question in time to avoid the collision which failure was negligence that proximately caused appellee's damages; that appellant's driver of the rear truck was driving too closely behind the lead truck on the occasion in question which was negligence that proximately caused appellee's damages; that the tank which exploded and damaged appellee's fire truck would not have within itself exhausted its liquified gas through pop-off valves except for some intervening cause; that appellee did not assume the danger and risk involved in fighting fires outside the city limits; that appellee's firemen were not negligent under the facts and circumstances in placing the fire truck in the vicinity of the burning trucks of appellant; that the placing of the fire truck of appellee by its firemen in the vicinity of appellant's burning trucks was not the sole proximate cause of appellee's damages; that appellee's damages were not solely and proximately caused by the negligence of some third person or persons not a party or parties to this law suit; that at the time and place of the explosion in question which caused appellee's damages, the two burning fuel trucks in question were un-der the exclusive control and management of appellant; that appellee's injuries and damages were not the result of an unavoidable accident and that the difference in the reasonable cash market value of appellee's fire truck immediately before and immediately after the explosion in question was $2,500.

■ Based upon the findings of the jury, the trial court rendered judgment accordingly, from which judgment appellant perfected its appeal and presents four points of error. Appellee has challenged appellant's first, second and third points of error on the alleged grounds that they are each too vague, too indefinite and too general to be considered by this Court and that they are each multifarious and do not comply with the provisions of Rules 322, 374 and 418 of the Texas Rules of Civil Procedure. There is some merit to the challenges made by appellee since appellant has not in every instance pointed out specific grounds of alleged errors or particular rulings of the Court about which complaints are made and in some instances it has complained about more than one specific error in the same point. However, because of our liberal indulgence in considering points of error so long as we can determine with some degree of certainty what appellant is complaining about, we are considering appellant's said points.

Appellant has charged in effect that the evidence relied upon for a judgment is hearsay and speculative and furnished nothing more than inferences of alleged facts; that nothing more than an existing condition was shown which might have remotely made the claimed injury and damages possible; that the doctrine of res ipsa loquitur does not apply because appellee failed to show that the instrumentality causing the damage was under the control and management of appellant at the time and place in question, because appellee failed to show a duty owed by appellant and a breach thereof, and because there was a failure to show a causal connection

between the claimed damages and any act or omission of appellant.

Some of the evidence heard is conflicting. When the evidence is conflicting but there is evidence of probative force to support the jury findings and the trial court's judgment, such should not be disturbed on appeal. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97, 99. To test the sufficiency of the evidence to determine if it has sufficient probative force to support the jury findings and the judgment of the trial court, we must give credence only to the evidence and circumstances favorable to such findings and judgment and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold such findings and judgment. Truelove v. Truelove, Tex.Civ.App., 266 S.W.2d 491, 494 (writ refused).

In the case at bar, appellee's volunteer fire chief and two other volunteer firemen testified with a minimum of discrepancies in their testimony. Their material testimony so given was to the effect that they had an early morning fire alarm on the occasion in question to the effect that two liquid gas trucks were on fire west of Tahoka, Texas, on the highway and that they had information that the drivers of the said trucks and the wife of one of the drivers may be trapped in the cabs of the said burning trucks and that they took one of appellee's fire trucks and rushed immediately to the scene of the fire for the purpose of rendering whatever help they may be able to render; that upon arrival they found the two trucks with trailers and tanks all on fire, one on each side of the highway pavement, with fire flames leaping high and a deputy sheriff and other officers were either there or soon arrived and it was from some of such officers that they had the previous information that there may be people trapped in the two burning trucks; that upon arrival they hurriedly parked the fire truck about 250 feet from the burning trucks and tanks, unrolled a water hose from the fire truck, attached a fog nozzle thereto and used it as a fog spray to throw up a screen between them and the burning flames until they could reach the cab of the burning truck, later established to be the lead truck when they were being operated, where they found no person in the cab of that truck, and they quickly determined that the intense heat and fire was too dangerous for them to try to examine the cab of the other burning truck nearby and they began hurriedly to roll up the water hose in preparation to take the fire truck and quickly get away from the fire and danger when the liquid gas tank of the other truck across the highway exploded with a portion of the said tank hitting appellee's fire truck with such force as to damage it materially; that no water was ever put on the tank that exploded or the truck across the highway from them and one of the firemen testified that no water was ever used on either truck and that nothing more than the fog spray was ever used. These said volunteer firemen gave further testimony to the effect that they only tried to rescue any persons that may be entrapped in one of the cabs of the burning trucks and never tried to extinguish the fire; that it was dangerous and out of control from the beginning and burned for several hours thereafter; that later examinations made by them revealed that there were indentations or crushed in places in the back end of the left hand side of the butane tank on the lead truck and in the front end of the right hand side of the butane tank on the rear truck which other proof showed was following the lead truck, thus showing that the front end of the tank on the rear truck had apparently collided with the back end of the lead truck; that near the point of the fire there was a paved highway turning off on the right hand side of the highway where the trucks were located toward O'Donnell, Texas, and the land was level and the highway the trucks were on was straight for a long distance in each direction.

J. R. (Pete) Young testified in effect that he was employed as transportation superintendent for appellant and had been for some time; that on the occasion in question appellant's two truck drivers, Collier and Jenkins, were engaged within the scope of their employment by appellant in driving the two trucks in question with dual tanks on trailers attached holding butane and propane from Sundown, Texas, for delivery at O'Donnell, Texas, and that the said drivers had exclusive control of the said trucks and tanks at the time and place of the collision and fire; that the said trucks were well equipped and in good operating condition and the drivers thereof had been well trained as such drivers; that they left Lubbock about 6:00 P.M. o'clock on the evening before the explosion, drove to Sundown where the trucks were loaded and then drove to the point of the fire and explosion, a distance of about 100 miles, before the explosion occurred soon after midnight; that both truck drivers were killed as a result of the fire; that each of the tanks would hold about 2200 gallons of butane which had a very high pressure; that he was advised immediately about the fire and arrived at the scene thereof about 2:00 o'clock after the fire had occurred soon after midnight when and where he made a careful investigation of the whole situation; that he examined all of the physical facts existing, including the indentations on the tanks previously shown to exist, and, based upon such investigation made by him, it was his opinion that the driver of appellant's rear truck was not keeping a proper lookout and was driving too closely to the lead truck, which resulted in a collision of the tank on the rear truck with the tank on the lead truck thus producing the fire immediately, which resulted in a pressure explosion and that the collision of the two tanks was the ultimate cause of the explosion in question; that when the butane and propane was released from its pressure, it immediately ignited and caused

the tremendous fire which could not be brought under control; that in his opinion appellee's firemen did what any ordinary, reasonable, prudent fire department would have done under the circumstances and that the fact that the firemen were willing to risk their lives in a chance to save a life was appreciated. Photographs were introduced corroborating the foregoing oral testimony given by the witnesses.

██ Eldon Gattis, a part-time helper in the Tahoka hospital, testified in effect that he heard the alarm of the fire and heard the sirens of the fire truck and the ambulances going to the fire, the light of which he could see west of town, and that he dressed and went immediately to the hospital for the purpose of helping in the case of any emergency; that soon after he arrived at the hospital, two city policemen arrived in a city police car accompanied by a person he soon learned was Earl Collier, the driver of the lead truck that was on fire; that he assisted the police in getting Collier, who was severely burned, out of the car and into the hospital; that Collier was placed in a hospital room and was conscious when he asked the witness to please notify his wife of his condition since he felt like he did not have long to live, and that he thereafter died within about one and one-half or two hours; that before Collier died and while he was conscious the witness was in conversation with him within 30 to 45 minutes after the explosion occurred and Collier said:

"* * * they were hauling butane and there were two trucks. And he was supposed to turn south off of the Brownfield Highway and go to O'Donnell or down in that vicinity. And he come up on this road that he was going to take a little bit sooner than he thought. And he looked in his rear view mirror and saw the truck behind him was a little closer than he thought it should be so he didn't apply his brakes as much as he would like to have. He went ahead and applied his brakes and in doing this, he felt something nudge or hit the truck."

The witness further testified that Collier further said, "It did not seem like a tremendous hit but more like a nudge," but the next thing he knew there was a mass of flames all about and he heard screams when he began to crawl away from the fire. Such testimony was admitted over appellant's objections. The admission of such evidence is usually left largely to the judicial discretion of the trial court and we think such evidence was properly admitted in this case as a part of the res gestae under the existing conditions and circumstances shown. Southern Surety Co. v. Weaver, Tex.Com.App., 273 S.W. 838, 840; International Travelers' Ass'n v. Griffing, Tex.Civ.App., 264 S.W. 263; Employers' Liability Assur. Corp., Ltd., of London, England v. Flint, Tex.Civ. App., 14 S.W.2d 1046; Railway Mail Ass'n v. Forbes, Tex.Civ.App., 49 S.W.2d 880.

■ Concerning appellant's charge that appellee failed to show that the doctrine of res ipsa loquitur applies here because appellee failed to show that the instrumentality causing the damage was under the control and management of appellant at the time appellee received its damages, a similar contention was made in the case of Beaumont Coca Cola Bottling Co. v. Guillot, Tex.Civ.App., 222 S.W.2d 141, 144, when the court said in part:

"Appellant further contends that since the offending object which inflicted the injury was not in the possession or control of the appellant at the time of the casualty, that the rule res ipsa loquitur cannot be relied upon to support the finding of the jury * * * 'There is nothing * * * in the reason for the rule (res ipsa loquitur) or in the principles upon whictisuiofndh ed to support the contention that its application is limited to cases where the injurious agency is in the control of the defendant at the time of the injury, but it is sufficient if it appears that such agency was in his control at the time of the negligent act which caused the injury.'"

In the case at bar the evidence conclusively reveals that the trucks and gas tanks were under the exclusive control and management of appellant's drivers who were engaged in the scope of their employment by appellant at the time of the collision and fire in question at which time and immediately prior thereto the said drivers were convicted by the jury of several acts of negligence which caused appellee's damages and there is ample evidence of probative force to support such jury findings, consequently the charges made here by appellant are refuted by the facts and the law governing such.

■ Appellant further claims that the doctrine of res ipsa loquitur does not apply because appellee failed to show a duty owed by appellant and a breach thereof. In the case of Walker Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, 509, the court said in part:

"From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved."

Consequently appellant and its agents under the law owed a duty of caution to protect the safety of appellee, its firemen and all others in that vicinity. Under the overwhelming weight of the evidence in support of the jury findings of negligence appellant, through its agents, breached that duty for which reasons appellant's claims are overruled.

■■ In our opinion the rescue doctrine is applicable in this case and it is apparent that the trial court and the jury thought so. The evidence conclusively reveals that appellee's firemen did not seek to extinguish the fire, which was beyond control from the beginning. The firemen sought only to rescue and save the lives of appellant's truck drivers and probably the wife of one of the drivers, who they had reason to believe may

be entrapped in the cabs of the burning trucks. The jury, supported by the testimony of appellant's transportation superintendent, J. R. Young, justified the firemen's actions and acquitted them of any negligence in so doing when it found the firemen's acts were such as ordinary, prudent firemen would have performed. Concerning such a matter, this Court said in part in the case of Wichita Falls Traction Co. v. Hibbs, Tex.Civ.App., 211 S.W. 287, 288:

"'The law' has so high a 'regard for human life it will not impute negligence to an effort to preserve it, unless made under such circumtances as to constitute rashness in the judgment of a prudent person.'"

More recently it was said in the case of Swift & Co. v. Baldwin, Tex.Civ.App., 299 S.W.2d 157, 160, that:

"Our view in this matter is supported by Goolsby v. Texas & N. I. R. Co., 150 Tex. 528, 243 S.W.2d 386, wherein the court held that a person acting to save another from imminent peril is not held to the accountability of his own acts as one who acts upon careful choice after deliberation."

In its 4th point, appellant charges that appellee's firemen, being experienced men who knew the danger of their voluntary mission in exposing themselves to the fire in question, assumed the risk under the doctrine of volenti non fit injuria, meaning "he who consents can not receive an injury." Under the record and the authorities already cited, appellant's said point is not well taken and is overruled. We cite in support of our position the following additional authorities: Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442.

Concerning the doctrine of res ipsa loquitur both parties have cited and are relying upon the rules as stated in 30–B Tex. Jur. 392, 393, Sec. 148, in the following language:

"To give rise to this presumption or inference, the evidence must show (1) that the injury or damage was the result of an act or omission of the defendant, (2) that an instrumentality by which the harm was caused or produced was in the exclusive possession of the defendant, and (3) that the calamity was one which is ordinarily averted by the taking of customary precautions or preventive measures."

In our opinion the record before us discloses ample evidence of probative force to show a compliance with the elements required under the rules there stated and that such evidence supports the jury findings which sustain appellee's contentions here made, thus invoking on behalf of appellee the doctrine of res ipsa loquitur.

Based upon evidence of probative force, the jury findings convicted appellant's employees. of numerous acts of negligence which proximately caused appellee's damages and exonerated appellee and its firemen of any and all negligence. After making a careful examination of the record and considering it fully we are unable to say as a matter of law that appellant is not liable for appellee's damages. In our opinion there is ample evidence of probative force to support all of the material findings of the jury upon which the trial court based its judgment and appellant's points of error to the contrary are all overruled. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659; Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445; Reddick v. Longacre, Tex. Civ.App., 228 S.W.2d 264; Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892; Davis Transport v. Bolstad, Tex.Civ. App., 295 S.W.2d 941.

According to the record before us and the law applicable thereto, it is our opinion that the judgment of the trial court should be affirmed and it is so ordered.