ROLAND ASSOCIATES, INC., et al., Appellants,

v.

Leonard S. PIERCE et al., Appellees.

No. 7321.

Court of Civil Appeals of Texas, Beaumont.

Jan. 27, 1972.

Hugh O. Mussina, Dallas, for appellants.

Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

KEITH, Justice.

Plaintiffs, Pierce, et al, were the owners of a commercial building which was rented to the defendant, Roland Associates. The building was damaged by fire and plaintiffs brought suit to recover the damage done to their building. Trial was to a jury and upon findings invoking the doctrine of res ipsa loquitur, judgment was rendered for plaintiffs' damage as found by the jury. Defendant made no objections to the court's charge but contends upon appeal that there was no evidence to sustain the jury's findings to the cluster of issues submitting res ipsa loquitur. By the second point, defendant contends that the jury's answers to such issues were against the great weight and preponderance of the evidence. Each of the points is based upon an appropriate assignment in the amended motion for new trial.

Defendant had acquired a used paint spray booth coated with used paint and had undertaken the task of cleaning the booth preparatory to its use in its operations. Through one Culver, an employee of defendant who was engaged in the cleaning operation of the booth, plaintiff established the fact that the booth was constructed of metal and was a free-standing device. Culver was assigned to the cleaning operation by the president of defendant corporation and was being assisted in his task by another man whose identity is not shown in our record. Plaintiffs' interpretation of the evidence is that this unknown individual [designated "Mr. X" by defendant], was an employee of the defendant. On the other hand, defendant contends with equal vigor that such fact was not established by any competent evidence.

The significance of this dispute is that it underlies the jury's answer to Special Issue No. 4 (the first in the res ipsa loquitur cluster) that "employees of the Defendant were in exclusive possession of the paint spray booth." This dispute, critical to the determination of the cause, requires a careful and detailed examination of the actual testimony of Culver. He testified:

"Q  Now, were you working with someone on that occasion, another employee of Roland Associates?

"A   Yes, sir.

"Q   Do you recall the name of the employee with whom you were working?

"A   I do not recall his name.

"Q   Do you recall what type of work he did for Roland Associates?

"A   I believe he was an electrician originally before he came to work for Roland. He did there as I did, whatever I was assigned to do.

"Q   Who was your supervisor?

"A   Mr. Roland Anglin [president and sole stockholder of defendant corporation].

\*   \*   \*   \*   \*   \*

"Q   What were you and the other employee doing that morning, sir?

"A   We were endeavoring to clean up a used paint booth . . . remove the old paint and place it in operation."

Being unable to get the elbow connection off the water pipe with the wrench being used, Culver went to a nearby building to get a sledge hammer so that "we could put more pressure on the elbow to remove it." As he was returning to the site of his work upon the paint spray booth, "someone yelled 'Fire'" and "I saw the paint booth on fire."

Roland Anglin, president and sole stockholder of the defendant corporation, corroborated Culver in his statement that he gave the instructions to clean the spray booth. He was, however, not so positive about assigning the other individual to the job, saying:

"Q   . . . Now, do you know the name of the individual who was working with Mr. Culver that morning at the time the fire started?

"A   No, I was trying to think who he was referring to awhile ago and I couldn't because as I say I don't

really have direct supervision of the people in the plant."

It developed that there may have been other workmen in the general area—"independent contractors" as described by Anglin—engaged in electrical and plumbing work "trying to put this building in order so we could move from one place to another." But, the witness did not "know whether they were there or not" at the time of the fire.

The foregoing testimony constitutes all of the evidence upon the question of exclusive control of the premises and of the men who were engaged in cleaning the paint spray booth.

The record is clear that the fire started in the paint spray booth and spread to other parts of plaintiffs' building causing the damages assessed by the jury; and, the amount of the damages found by the jury is not attacked.

Defendant's complaint of "no evidence" rests upon the trial court's refusal to enter judgment non obstante veredicto. Such action would have been authorized only if there was no evidence of probative force upon which the jury could have made the finding relied upon by plaintiffs. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199 (1952). In considering this point, we must look at the testimony from the standpoint most favorable to the plaintiffs and indulge every reasonable intendment deducible from the evidence. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 550 (1962). See also Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.Law Rev. 361 (1960).

The doctrine of res ipsa loquitur was stated with admirable simplicity in the case of Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 969, 160 A.L.R. 1445 (1944):

"Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact

that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

In the case of Estrada v. Central Power & Light Company, 336 S.W.2d 768 (Tex. Civ.App., San Antonio, 1960, error ref.) the court said:

"In order to invoke the doctrine of res ipsa loquitur there are four elements which must be pleaded and proved: (1) The thing or instrumentality which causes the injury must be under the management of the defendant or his servants; (2) the accident must be such as in ordinary course of events does not happen, if those who have its management and control use proper care; (3) there must be an absence or unavailability of direct evidence of negligence; (4) there must exist a sufficient duty on the part of defendant to use due care."

See also, Bond v. Otis Elevator Co., 388 S.W.2d 681, 685 (Tex.Sup.1965).

Only the defendant had knowledge of the identity of the persons working around the paint spray booth at the time the fire started. Its president, Anglin, did not come forward with any proof that "Mr. X" was not an employee of the defendant corporation nor did he dispute Culver's testimony that his assistant was a fellow employee of the defendant. There is only a hint in the record that "independent contractors" were even upon the premises; and there is no probative evidence in the record that such "independent contractors" were close to the paint spray booth at the time the fire originated therein.

■ Culver's testimony that "Mr. X" was a fellow employee of the defendant corporation is not rebutted in our record by any competent evidence. Only by innuen-

do does defendant contend that this individual may have been an independent contractor. Our courts in Texas from a very early day have held the burden is upon one claiming exemption to establish the independence of the contract of the workman. Justice Brown, speaking for our Supreme Court in Taylor B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868, 870 (1895), said:

"Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt . . . the person for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant did not exist."

It was plaintiff's burden to establish the fact, by probative evidence, that the paint spray booth was in the exclusive possession and control of defendant at the time of the incident in question. The defendant had no burden of coming forward with *any* evidence until such time as the plaintiff succeeded in establishing the necessary elements upon which to base his claim for the application of the doctrine of res ipsa loquitur.

■ While the question is close and the evidence upon the point is weak, after indulging every reasonable intendment in favor of the jury's finding, we are of the opinion that there was some evidence of probative force supporting the answer.

We are in a peculiar position here when we come to consider defendant's point that the evidence is factually insufficient to support the jury's finding that defendant was exclusively in possession of the paint spray booth. We have quoted all of the evidence on the point in passing upon the no evidence point just discussed. When we consider the insufficient evidence point, we do so under the rule of law which requires that we consider the record as a whole.

Calvert, supra (38 Tex.Law Rev. at p. 366); Garwood, "The Question of Insufficient Evidence on Appeal," 30 Tex.Law Rev. 801 (1952); In Re King's Estate, 244 S.W.2d 660, 661 (Tex.Sup.1952). Ordinarily this rule would allow us to consider the evidence offered by the defendant; but here, the defendant did not offer any evidence. Therefore, considering the record as a whole, we are of the opinion that the jury's finding as to exclusive control was not clearly wrong nor manifestly unjust.

Defendant also assails the finding of the jury that its negligence proximately caused the damage to plaintiffs' building, again urging the no evidence and insufficient evidence points. Plaintiff offered evidence that the fire originated in the paint spray booth from whence it spread to other parts of the building. The only flammable substance around the spray booth was the accumulation of the old paint therein and thereon. The booth was not connected with any source of electrical energy nor was there a gas connection to it. There was no evidence of the presence of any inflammable material therein or in the general vicinity. From this evidence, the jury could well have found, based upon circumstantial evidence, that the fire would not have started but for human fault.

█ Plaintiffs assert and we readily agree that negligence may be shown by circumstantial evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 275 (1958). But the circumstantial evidence needed must go beyond speculation and it must further prove causal connection between the injury and the alleged fault or negligence. El Paso Natural Gas Company v. Harris, 436 S.W.2d 408, 411 (Tex.Civ.App., El Paso, 1968, error ref. n. r. e.).

█ This is so for, as the rule is stated in Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 662 (1942), "[N]egligence is never presumed, and that the mere happening of an accident is no evidence at all of negligence."

█ The reason for this rule, applicable to damage caused by fire, theft, storm or accident cases, as stated by the court in Ablon v. Hawker, 200 S.W.2d 265, 267 (Tex.Civ.App., Dallas, 1947, error ref. n. r. e.), is because:

"Negligence is a positive matter, and, before it can be imputed to a party to a suit, facts must be alleged and proved showing negligence, or circumstances must be shown from which negligence may be reasonably inferred, and that such negligence was the proximate cause of the injury complained of."

█ Since the doctrine of res ipsa loquitur raised only a presumption of negligence, when properly invoked, it must of necessity, be based upon more than surmise or suspicion. Trinity Universal Ins. Co. v. Cattleman's Steak House, 470 S.W.2d 224, 226–227 (Tex.Civ.App., Amarillo, 1971, no writ).

However, considering the record as a whole, as we are required to do in considering the defendant's subsidiary point, we are of the opinion that the findings of the jury as to the facts invoking the doctrine of res ipsa loquitur are not against the great weight and preponderance of the evidence. There was evidence in the record which supported each of the elements necessary for the imposition of liability under such doctrine. Honea Case, supra (183 S.W.2d at p. 969).

The judgment of the trial court is in all things affirmed.